# STEVEN K. FRANKEL
Attorney at Law
325 Broadway, Suite 502
New York, New York 10007

Telephone 212 732 0001
Frankelrudd@aol.com

Facsimile 212 732 8460

October 25, 2017

**Via ECF and Facsimile Transmission**

The Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   United States v. Oded Orbach
      Docket No. 11 Cr. 111 (NRB)

Dear Judge Buchwald:

Please accept this letter as my apology and the much belated response to the issues raised by Defendant Oded Orbach in his motion/complaint before the Court.

During the past several months I have written several lengthy drafts but, each time, I have discarded them and started over, because Mr. Orbach's case was not only very difficult to defend, but also involved Mr. Orbach's past and psychological issues. I also spent an extraordinary amount of time and effort reviewing the voluminous discovery, meeting frequently with Mr. Orbach, speaking with the Prosecutors, with Mr. Orbach's family, with a close comrade from their days in the Israeli Army, representatives from the Israeli Consulate, and his treating psychiatrist from more than twenty (20) years ago.

## The Early Stages of the Case

As Your Honor certainly recalls, from the earliest appearances in your Courtroom, Mr. Orbach insisted upon addressing the Court, disregarding your continuing comments and my attempts to dissuade him, although he did voice legitimate concerns, including the MCC failing to replace his hearing aids and eyeglasses which had been taken from him.

Nevertheless, there was some concern that Mr. Orbach had some emotional or psychological issues.

The Honorable Naomi Reice Buchwald
October 25, 2017
Page 2

Being far away from his wife (in Chicago) and two sons, having difficulty communicating with them, and the horrible publicity reported in the Chicago newspapers, it was not surprising that Mr. Orbach was suffering from depression and anxiety attacks.[1]

Voluminous Discovery

The government produced volumes of discovery documents on a "rolling basis" including evidence that the co-defendant, Alwar Pouryan, was involved in a conspiracy to transport large quantities of narcotics, and that Pouryan made trips to Africa, all of which had nothing to do with Mr. Orbach, who was not aware of Pouryan's narcotics dealings, didn't know any of the African defendants, and they didn't know Mr. Orbach.

Nevertheless, Mr. Orbach understood that if we elected to go to trial, despite the Court's best efforts to prevent unfair taint from the narcotics conspiracy with appropriate limiting instructions, it was not good for a jury to consider that evidence during the same case and against his co-defendant in the "weapons conspiracy."

Mr. Orbach's Research

The discovery supported the government's contention that Mr. Orbach had spent a considerable amount of time researching the possibility of obtaining various military grade weapons (from legitimate sources). Mr. Orbach never denied this, and most often made contacts using his own name, computer and server. He explained that he believed that Alwar Pouryan, who was directing him to locate and price the various weapons, was never for any illegitimate objectives.[2]

Up until the day of their arrest, Alwar Pouryan had Mr. Orbach go back on the internet to create a list of weapons and the prices.

---

[1] We also learned that his mail to and from the MCC was being delayed, unreasonably, often taking a month or longer to get through.

[2] Pouryan did have various official credentials and contacts with high placed United States military officials and had access to military bases, and government facilities, which Mr. Orbach explained convinced him that they were working on some United States government sanctioned operation.

The Honorable Naomi Reice Buchwald
October 25, 2017
Page 3

Information of Oded Orbach's Family and Friends

From the early meetings, Mr. Orbach spoke tearfully about his niece who had died with several other friends, victims of a suicide bombing in Tel Aviv as she was distributing her wedding invitations in a club. He insisted that he could never be involved in the sale of weapons to our enemies or the enemies of Israel. His plan was to "set up" the potential Arab/Taliban buyers by pretending to have military grade weapons to sell, then turn them in, be a hero and hopefully make some money, as well.

He was convinced that Pouryan was working with the CIA or with his other United States military contacts, who were following and directing their efforts.

His late father's first wife contacted me and we met. She confirmed that Oded's father was a high ranking, respected member of the Mossad, Israel's intelligence agency. She also explained that the tragic death of Oded's niece was very difficult for him, as was a major helicopter accident when Oded was in the Israeli Army, in which several dozen of his comrades were killed.

Israeli Consulate

Shortly after his arrest, a woman from the Israeli Consulate telephoned me and advised that she was going to visit with Oded to offer whatever assistance she could. After she met with Oded at the MCC, I contacted her and asked her if I could visit the Consulate to speak with an official who might be more familiar with cases of this nature. I also was eager to get copies of the Israeli Army records of the accident to corroborate Oded's version and the reports of the psychological impact on him at the time and throughout the following years.

They made an appointment for me for a few weeks later. When I arrived, they advised that the woman I had spoken with, and who had offered to help, had been called back to Israel on Consulate matters.

A man came downstairs to greet me in the reception area and he apologized for not being fully briefed, but explained that someone would be in touch with me soon. He said that he didn't have a business card to give to me, and he did not provide his title or a telephone number to reach him. He said, "I'm not involved in these matters."

The Honorable Naomi Reice Buchwald
October 25, 2017
Page 4

I never heard from the Israeli Consulate but I did receive a call from a man who said that he would like to meet with me to discuss Oded's case and try to help. I invited him to our office, but he chose Katz's Deli instead. I gave him my cell number, but he refused to give his. It seemed very weird, like a grade B movie, but Oded said that the Mossad and Israeli Intelligence often does things that way.

We were desperate to get Oded's military records and reports from the Israeli psychiatrist which Oded said would show how depressed he was and how loyal he was and is. At Katz's, the man introduced himself only as "Chaim," no last name, no ID or telephone number. He seemed to know the history of the case and United States Law. I explained how broad the conspiracy charge was in the case, and that even if Oded wasn't willing or able to sell weapons to terrorists, he could still be convicted based upon his activities.

I told him that we were in need of Oded's military and psychiatric records, but everyone had told us that the Israeli's never would release them. He agreed, but said that he "knows people." I also asked if he knew anyone in the Israeli government who might help get Oded transferred, even sometime in the future, to serve his time in an Israeli prison near to his mother and family. He offered to try, and said he would get back to me. "Chaim" telephoned, again, about a month later and said he was "still working on the (things) we discussed." That was the last I heard from him,[3] or anyone from the Consulate.

The Trial - Waiving the Jury

Many times, prior to the date set for trial, Oded and I discussed waiving a jury. He understood that the mention of the Taliban, purchasing stinger missiles and military grade weapons and Pouryan's narcotics deals in Africa would not be well received by an American jury. The only plea offer from the government would require him to allocute, in substance, to providing aid and comfort to an enemy, a terrorist organization. He could not and would never say that, since "it's a lie, I'd never do anything like that." He agreed that the Court, "is very smart and, hopefully, she'll understand the truth and be fair."

---

[3] Oded's comrade from the same Unit in the military kept in touch, but he was unable to get anyone to listen to the request for Oded's records, and confirmed that the Israeli military and intelligence agencies almost never release materials like those we were requesting.

The Honorable Naomi Reice Buchwald
October 25, 2017
Page 5

     During the trial, as we expected, Pouryan claimed that he was "investigating Oded, and wasn't sure why Oded became involved, but he was "helping to keep an eye on him (Oded)." Pouryan claimed that he reached out for Oded because he had been told that Oded was involved in the purchase of weapons. (There was no evidence produced that would confirm that to be true.)

### Oded's Former Psychiatrist from Chicago

     It was not until just prior to sentencing that someone helped to locate Oded's Chicago psychiatrist from more than 20 years ago. Although he is retired, he remembered Oded and recalled his issues and counseling sessions. The doctor had concluded that Oded had, "delusions of grandeur" and "heroism." He felt a deep sense of guilt that he and an Army comrade had been pulled out by their commanding officer for a different assignment just prior to he and his platoon leaving on the helicopter training mission.

     During that training, the helicopter crashed, killing everyone aboard.

     The psychiatrist spoke about how it was no surprise that Oded would become involved in something like in this case, after convincing himself that he was doing a great deed and was a most important "operative." We submitted this report and information to the Court, but it did not alter the basis for the conviction.

### Oded's Decision to Not Testify

     From early in the case Oded insisted that once his full story was told, it would embarrass the United States government and create problems for the Israeli's as well.

     As discovery progressed, Oded was frustrated with the lack of help from Israel, and the absence of the devastating evidence he believed existed against Pouryan, which would establish that Oded was duped by Pouryan. He was confident that people like General Patraeus and other high ranking United States military persons and Pouryan's military contacts would be too embarrassed to learn that Pouryan also was involved with an African based narcotics conspiracy, and probably was acting without the authority and supervision of the State Department. In any event, certain of the government's witnesses against Pouryan testified that he was primarily an interpreter, without the authority to participate in any covert operations.

     When Oded and I discussed, several times, the possibility of his testifying in his own behalf I reminded him that he had done nothing throughout their involvement to verify Pouryan's credentials and possible authority to act for any United States government agency.

Case 1:11-cr-00111-NRB   Document 260   Filed 10/26/17   Page 6 of 6
Oct. 25 2017 04:30PM HP Fax                                    page 7

The Honorable Naomi Reice Buchwald
October 25, 2017
Page 6

Neither had Pouryan offered any assistance in locating, pricing or procuring the weapons they discussed, leaving all of that to Oded. That included, also, finding a "Black Market" seller, a mode to transport the weapons, and a port to which the weapons could safely be shipped and then unloaded, and then the receipt and transfer of the money.

If Pouryan was working with the United States government, wouldn't he have had help to get these things in place for their supposed "sting" operation to work? Were he and Pouryan being protected by the military or anyone else when meeting with the "buyers?"

Oded accepted that he had no good answers for all of those areas of questions, and others, which the government would be asking and for which Pouryan did nothing and had no "outside" assistance, which would have been there had Pouryan been an undercover operative for any military or United States agency.

Finally, Oded would have had to testify that prior to going abroad he knew that he didn't trust Pouryan. He simply had no reasonable answers for the cross-examination questions addressing where he would have gone had he learned that either Pouryan was a fraud, or worse, that the men with him they were meeting to sell the weapons to really were looking to rob them and likely kill them...with no backup or support. Oded's motive to be involved also had no support, since he never contacted any United States or Israeli authorities to alert them or to get protection.

After I did several "mock" cross examinations with Oded, he agreed that he should not testify. Instead, both the government, and I, would easily discredit Pouryan, and hope to distinguish the two men for the Court's decision.

Conclusion

I recognized that I had grown too emotionally involved with Oded Orbach during my working on this case. The most difficult thing to explain to any defendant with no legal background is the elements of conspiracy charges and that their actions form the basis for a conviction. Intent is very difficult to prove and, generally, does not serve as a defense. I made my best efforts to help him and to defend him against the charges. Although I came to believe that Oded Orbach never would have sold weapons to the Taliban or to any terrorist organization, sadly, the evidence presented was overwhelming.

Respectfully submitted,

Steven K. Frankel

SKF/ma